IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

MAR 11 2009

DAVID J. MALAND, CLERK
BY
DEPUTY _____

United States District Court
Southern District of Texas
FILED

APR 10 2015

Clerk of Court

§ SEALED
§ 4:09-CR-28
§ (Judge Crone)
§
§ M-15-0549-M-13
§
§

REYNALDO SANTIBANEZ (13)   §

## SUPERSEDING INDICTMENT

### COUNT ONE

From on or about sometime in 2005 and continuing thereafter up to and including the date of this superseding indictment, in the Eastern District of Texas and elsewhere **REYNALDO SANTIBANEZ**, Defendants herein, and others, known and unknown to the Grand Jury, as well as Josue Correa, Carlos Betancourt, Marco Garcia, and Christopher Holland, did knowingly and intentionally conspire, combine, confederate and agree together, with each other, and with other persons, to knowingly and intentionally import, distribute and possess with intent to distribute 150 kilograms or more of cocaine, a schedule II controlled substance, 15 kilograms or more of a mixture of substance containing methamphetamine, a schedule II controlled substance, 1 kilogram or more of heroin, a schedule I controlled substance, and marijuana, a schedule I controlled substance.

1.  It was part of the conspiracy that the various conspirators would utilize locations in and around the Dallas, Texas Metroplex, for the purpose of storing, and transporting cocaine, methamphetamine, heroin and marijuana that had been previously smuggled into the United

States from various locations in Mexico. These various controlled substances were then transported by co-conspirators in automobiles and in commercial conveyances to locations in Tennessee, North Carolina, Georgia and Washington D.C. and other cities for further distribution.

2. It was further a part of the conspiracy that the various co-conspirators would travel to various Texas border cities, cross the Texas/Mexico border and drive to Monterrey, Mexico to see ___. The purpose of these trips was to obtain controlled substances or to deliver proceeds earned from previous sales of the controlled substances.

3. The various co-conspirators would utilize multiple cellular telephones to further the objects and ends of the conspiracy. On occasion, the cellular telephone would be listed as being subscribed to by individuals other than the actual user/co-conspirator. The principal telephone instrument used by the conspirators was a "push to talk" walkie talkie style of cellular telephone. Frequently, the co-conspirators would often use code words to disguise the true meaning of the conversation.

4. On occasion, the various conspirators would pay for controlled substances obtained in Monterrey from the Defendant, ___, and others, by delivering AR-15 rifles, ammunition and other types of weapons to him in Mexico. The vast majority of these weapons and ammunition were obtained in the Eastern District of Texas. More specifically, the Correa brothers would received extra credits from ___ for delivering weapons in lieu of the payment of United States currency for the controlled substances obtained from him.

5. It was further a part of the conspiracy that various co-conspirators would utilize numerous vehicles to further the objects and ends of the conspiracy. Typically these vehicles would be outfitted with specially designed compartments that were used to store and hide the controlled substances, currency and weapons. Usually the compartments would be fabricated by

the Defendant, __, in the Los Angeles, California area. Some of the vehicles so used were two Range Rovers, two Volkswagen Touaregs, a Chevrolet Tahoe, a Nissan Sentra, a Chevrolet Avalanche an Infiniti sedan, and a Cadillac. On other occasions, the conspirators utilized commercial transportation to transport and deliver the controlled substances to various locations throughout the United States.

6. During the time frame of the conspiracy, the conspirators routinely engaged in the bulk transfer of large amounts of United States currency from the United States to Monterrey, Mexico.

Additionally, the conspirators also engaged in acts of money laundering, disguising the true source, ownership and control of the drug proceeds. With these drug proceeds, the conspirators also purchased personal vehicles and parcels of real estate, invested capital in businesses, and acquired numerous items of jewelry, firearms, and time share vacation properties. In all of these instances, the conspirators intended to promote the objectives of the narcotics distribution conspiracy, knowing that the proceeds in each of their respective possession had been earned from the sale of cocaine, methamphetamine, heroin and marijuana.

All in violation of Title 21, United States Code §§ 846 and 960.

### COUNT TWO

From on or about sometime in 2005 and continuing thereafter up to and including the date of this superseding indictment, in the Eastern District of Texas and elsewhere, the Defendant, __, aided and abetted by others known and unknown to the Grand Jury, knowingly exported, sent and attempted to export and send from the United States to Mexico, merchandise, articles, and objects, to wit: AR-15 rifles, ammunition and other types of weapons, contrary to the laws and regulations of the United States.

In violation of Title 18, United States Code §§ 554 and 2.

## NOTICE OF INTENT TO SEEK CRIMINAL FORFEITURE

Pursuant to 21 U.S.C. § 853

As the result of committing one or more of the foregoing offenses alleged Count One of this Superseding Indictment a Title 21 drug offense, Defendant herein, shall forfeit to the United States pursuant to 21 U.S.C. § 853:

1. any property constituting, or derived from, and proceeds the Defendant obtained, directly or indirectly, as the result of such violation; and

2. any of the Defendant's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation,
including, but not limited to the following:

**Real Property**

1. All that lot or parcel of land, together with its buildings, improvements, fixtures, attachments and easements located at **11815 Avery, Balch Springs, Texas.** Being the same property more fully described as lot 11, Block E of the Hickory Meadows subdivision, in the City of Balch Springs, Dallas County, Texas according to the map and plat thereof, recorded in Volume 84107, Page 2791 of the map records of Dallas County, Texas.

2. All that lot or parcel of land, together with its buildings, improvements, fixtures, attachments and easements located at **1934 Malone Cliff View, Dallas, Texas.** Being the same property more fully described as Lot 12, Block A/4015, Belmont Hotel Phase 2, of the City of Dallas, Dallas County, Texas.

3. All that lot or parcel of land, together with its buildings, improvements, fixtures, attachments and easements located at **1854 Angelina Drive, Dallas, Texas.** Being the same property more fully described as Lot 1, Block 13/7130, of the Roosevelt Manor Addition to the City of Dallas, Dallas County, Texas, according to the map and plat thereof, recorded in Volume 8, Page 178 of the Map Records of Dallas, County, Texas.

4. All that lot or parcel of land, together with its buildings, improvements, fixtures, attachments and easements located at **2303 N. Masters, Dallas, Texas.** Being the same property more fully described as Lot 1, Block 2/6757, of Elaine's Subdivision Number 1, an addition to the City of Dallas, Dallas County, according to the Plat thereof recorded in Volume 4, Page 133 of the Map Records of Dallas County, Texas.

**Cash Proceeds**

       Approximately $ 20,000,000.00 in United States currency and all interest and proceeds traceable thereto, in that such sum in aggregate is property constituting, or derived from, proceeds obtained directly or indirectly, as the result of the foregoing offenses alleged in this Indictment.

**Substitute Assets**

       If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant -
          (a) cannot be located upon the exercise of due diligence;
          (b) has been transferred or sold to, or deposited with a third person;
          (c) has been placed beyond the jurisdiction of the court;
          (d) has been substantially diminished in value; or
          (e) has been commingled with other property which cannot be subdivided without difficulty;

       it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of Defendant up to the value of the above forfeitable property, including but not limited to all property, both real and personal owned by Defendant.

       By virtue of the commission of the offenses alleged in this Indictment, any and all interest the Defendants have in the above-described property is vested in the United States and is hereby forfeited to the United States pursuant to 21 U.S.C. § 853.

       A TRUE BILL
       GRAND JURY FOREPERSON

       REBECCA A. GREGORY
       UNITED STATES ATTORNEY

DATE

       JOHN M. BALES
       ASSISTANT U. S. ATTORNEY

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

|                              |   |                |
|------------------------------|---|----------------|
|                              | § |                |
|                              | § | SEALED         |
|                              | § | 4:09-CR-28     |
|                              | § | (Judge Crone)  |
|                              | § |                |
|                              | § |                |
|                              | § |                |
| REYNALDO SANTIBANEZ (13)     | § |                |

NOTICE OF PENALTY

COUNT I

VIOLATION:   21 U.S.C. §§ 846 and 960.

PENALTY:   Imprisonment for not less than ten (10) years nor more than life; a fine of not more than $4,000,000.00, a term of supervised release of at least five (5) years.

SPECIAL ASSESSMENT:   $100.00


COUNT TWO

VIOLATION   18 U.S.C. §§ 554 and 2.

PENALTY:   Not more than ten (10) years imprisonment, a fine not to exceed $250,000, or both; a term of supervised release of not more than five (5) years;

SPECIAL ASSESSMENT:   $100.00